# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 6, 2012 Session

## STATE OF TENNESSEE v. DENNIS MARSHALL

### Appeal from the Criminal Court for Shelby County
### No. 08-06065   James Lammey, Judge

---

### No. W2011-00742-CCA-R3-CD - Filed September 27, 2012

---

The Defendant, Dennis Marshall, was convicted by a Shelby County Criminal Court jury of two counts of possession with intent to sell twenty-six grams or more of cocaine, a Class B felony. See T.C.A. § 39-17-417 (2010). The trial court merged the convictions and sentenced the Defendant as a multiple offender to sixteen years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction and that the trial court committed plain error (2) by denying him an open and public trial; (3) by admitting hearsay statements into evidence; (4) by admitting evidence of other investigations; (5) by admitting evidence of the utility account holder at the home in which the drugs were found; (6) by admitting evidence about his having money but no job; (7) by admitting non-expert testimony about the value of the cocaine found at the crime scene; (8) by admitting evidence about the recovery of a razor blade at the scene; and (9) by admitting evidence of his personal relationship with a minor female. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Joseph A. McClusky (on appeal) and Larry Fitzgerald (at trial), Memphis, Tennessee, for the appellant, Dennis Marshall.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

At the trial, Memphis Police Officer Lawrence Banks testified that in April 2008, he worked in the organized crime unit and that he was a member of the narcotics drug team. He said he was familiar with the home located at 2601 Young Avenue in Shelby County from receiving several "drug complaints" about the home and his narcotic investigation. He said he received information from a confidential informant about a black male with a medium complexion, who went by the alias "Weasy," selling cocaine from the home. He said that his informant told him "Weasy" weighed between 230 to 260 pounds, was 5'8" to 5'10" tall, and was approximately twenty-five to thirty-five years old. He said that he had received information from the informant for about one year and that the informant's information had resulted in convictions. He said he checked utility records to determine who lived at the home, although he could not recall whose name was listed. He said that based upon his experience, people who sold drugs from their home rarely had utility accounts in their name.

Officer Banks testified that after he received information about "Weasy" selling cocaine from the home, he set up surveillance fifteen to twenty yards from the home. He said most of the surveillance was conducted during the day. He said that over the course of his investigation, he observed five or more people enter the home, stay for a few minutes, and leave. He said that on one occasion, he saw an "older black male" leaving the home with an "unknown object" in his hands and carrying a tobacco pipe. He said the man took the unknown object, placed it in the pipe, and lit the pipe. He said that in his experience, people used pipes to smoke drugs.

Officer Banks testified that he sent his confidential informant to the home, that the Defendant met the informant on the porch, that the two went inside the home, and that the informant left the home a few minutes later. He said the informant returned with a substance. He said that before the informant entered the home, he searched him for drugs, weapons, and money. He said the informant told him that nobody else was in the home. He said that during his investigation, he saw the Defendant standing on the porch or inside the doorway, allowing people to enter the home. He said that other than the people coming and going from the house, he saw nobody else standing on the porch or inside the doorway. He stated that over the course of his investigation, he saw the Defendant open the door, look outside, and close the door three times. He said that he saw the Defendant at least fifteen times at the home.

Officer Banks testified that on April 16, 2008, he went to the home thirty minutes before his team executed a search warrant and that he observed four people enter and leave the home. Each person left the home within three minutes of arriving. He said he saw the Defendant at the home before executing the search warrant. He said nobody responded when

he knocked on the door and announced the police were outside.  He stated that the team forced open the door and entered the home and that he heard an officer shout, "He's running."  He said he ran to the back porch and saw two officers chasing the Defendant, who was apprehended and returned to the home.  He said he went inside the home, saw that nobody else was inside, and searched the home with the other officers.

On cross-examination, Officer Banks testified that the confidential informant used in this case was a paid informant and that the informant bought drugs from the home once.  He said the police department provided the money used to buy the drugs.  He said he observed the house three times in less than one week.  He denied taking pictures during the surveillance or having pictures of the Defendant selling drugs.  He agreed he did not witness a drug sale.

Officer Banks testified that his "knock and announce" lasted about five to ten seconds before the door was forced open.  He and the twelve other officers wore organized crime unit gear with "POLICE" written on the front and back.  He said that after he entered the home, he saw other officers collecting evidence, including numerous individual bags.  He said he took pictures of the bags.  He did not recall finding money but said he found the Defendant's clothing, 32.5 grams of crack cocaine, drug scales, and a glass tube inside the home.  He said that the informant bought twenty dollars worth of crack cocaine, which weighed between one-half and one gram.  He thought the crack cocaine weighed 0.8 gram.

On redirect examination, Officer Banks testified that he did not charge the Defendant with a "controlled buy" because the informant's purchase was an investigative tool used to obtain information.  He denied knowing the name in which the home's utilities were registered.  He looked at a photograph of a person and the corresponding driving history and said he had never seen the person at the home.  The driving history showed that the person weighed 405 pounds.  He said that after the Defendant was returned to the home, the Defendant got a sweatshirt from one of the rooms in the home.

Officer Banks testified that based on his experience and training, the cocaine found in the home was not for "normal use."  He said that two grams or less was for personal use and that the thirty-five grams found in the home was about fifteen times more than that for personal use.  He said that one rock of crack cocaine usually sold for $10, depending on the weight, and that the crack cocaine found in the home had a value of $1500.

Memphis Police Officer Christopher Parker testified that he was one of the officers executing the search warrant at the home on April 16, 2008, and that he saw the Defendant run from the home, through the backyard, and into a drainage ditch with water.  He said he and Officer Davis followed the Defendant for one-quarter mile over three minutes before

catching him in the drainage ditch. He and the Defendant got wet during the chase. He said nobody else ran from the house. He said the Defendant wore a white t-shirt and jeans during the chase.

Officer Parker testified that a road crossed over the drainage ditch, that there was a small tunnel under the road, and that he lost sight of the Defendant for about one second when the Defendant went into the tunnel. He said that the Defendant had his hand in his pants pocket when they caught him and that for the officers' safety, they "took him to the ground" and placed him in handcuffs. He identified a picture of the Defendant wearing a sweatshirt that the Defendant was allowed to put on before being taken to jail. He agreed that the Defendant was not wearing the sweatshirt during the chase and that the Defendant got the sweatshirt from the home. He looked at the same photograph and driving history that Officer Banks viewed and said he did not see the person at the home.

On cross-examination, Officer Parker testified that he stood on the west side of the home near the fence and that he climbed over the fence when he saw the Defendant run from the home. He did not know the home was a duplex and said he did not go into the home. He said the Defendant stopped running when Officer Davis pulled his weapon. On redirect examination, Officer Parker testified that he saw the side of the Defendant's face as he ran from the home, that he saw the Defendant from behind as he ran away, and that it was sunny outside at the time of the chase.

Memphis Police Officer Michael Davis testified that he helped search the home on April 16, 2008, and that before he saw the Defendant run from the home, he tried to climb over the fence but it collapsed. He said that after he hit the ground, he saw the Defendant run out the side door twenty feet away. He said the Defendant wore a white t-shirt and jeans. He said he chased the Defendant through the backyard into a drainage ditch. He stated that he never lost sight of the Defendant during the chase. He stated that Officer Parker also chased and helped handcuff the Defendant. He said he saw the Defendant's face after the Defendant was placed in handcuffs.

Officer Davis testified that after the Defendant was handcuffed, he patted the Defendant for weapons. He found $328 in the Defendant's front pants pocket. He was shown the same photograph as Officers Banks and Parker, but he did not recognize the person. He agreed that it was not a photograph of the Defendant and that the Defendant did not weigh 400 pounds.

Officer Davis testified that based on his experience and training, thirty-two grams of crack cocaine was worth about $1500. He said he had never seen thirty-two grams of crack cocaine for personal use. He said that the amount found inside the home was a large,

expensive amount and that drug users normally possessed one-half to two grams and a pipe. On cross-examination, he testified that Officer Parker was behind him while he chased the Defendant. He agreed the Defendant stopped on his own without being tackled. On redirect examination, he testified that he told the Defendant to stop at least four times during the chase but that the Defendant did not stop running.

Alice Benton testified that she knew the Defendant as Dennis Dockery, that she met him when she was sixteen years old, and that they dated for three or four years, beginning when she was sixteen years old. She was twenty-two at the time of her testimony. She said that the Defendant lived at 2601 Young Street while they dated and that she lived with her cousin. She said she stayed overnight at the Defendant's home approximately ten times. She said nobody else stayed at the Defendant's home when she stayed there. She said that to her knowledge, nobody lived in the adjacent duplex while she and the Defendant dated. She said the Defendant's sisters did not live with him.

Ms. Benton was shown the same photograph that was presented to the police officers and testified that it was not a photograph of the Defendant. She said that it was a photograph of a man she knew as "Boo" and that Boo's cousin dated her mother. She said that she did not see Boo at the Defendant's home while they dated and that to her knowledge, the Defendant and Boo did not know each other. She said the utilities at the Defendant's home were in her name for a couple of months beginning in May 2006. She said she agreed to put the utilities in her name at the Defendant's request. She did not ask him the reason. She said she never received the utility bill, paid the bill, or lived at the Defendant's home.

On cross-examination, Ms. Benton testified that Boo's name was Reginald Dowdy, that she met Mr. Dowdy two years before his death, and that she met Mr. Dowdy after her relationship with the Defendant ended. She said she never saw Mr. Dowdy while she and the Defendant dated. She said Mr. Dowdy was about 5'4" to 5'5" tall and "bigger" than the Defendant. She agreed she spent a lot of time with the Defendant and at his home. She said that she and the Defendant stopped dating in 2007, that she had no contact with the Defendant after they ended their relationship, and that she did not know where the Defendant lived after 2007.

On redirect examination, Ms. Benton testified that she saw Mr. Dowdy between August and October 2009. She said Mr. Dowdy lived at 855 Cella Street with her mother as long as she knew him. She said Mr. Dowdy never lived at the Defendant's home. She identified a photograph of Mr. Dowdy and his driving history showing he weighed about 400 pounds.

Robert Gaia testified that he worked at Memphis Light, Gas, and Water as a supervisor in residential customer records. He said his records showed that for the previous three years, Sandra Foster, John M. Hopea, James L. Murphy, Reginald G. Dowdy, Alice M. Benton, and Joseph A. Miller, Sr., were account holders for utility service at 2601 Young Avenue. He said the utilities were in Ms. Benton's name from May 15, 2006, to June 15, 2006, but he did not know if Ms. Benton lived there. He said the utilities were in Mr. Dowdy's name from September 6, 2006, to June 13, 2008, but he did not know if Mr. Dowdy lived there. His records did not show when the Defendant lived at the home. On cross-examination, Mr. Gaia testified that his records did not show if the home was a duplex. On redirect examination, he testified that his records did not show another residence at 2601 Young Avenue.

Memphis Police Officer Charles Windbush testified that on April 16, 2008, he worked in the organized crime unit and that he executed a search warrant at 2601 Young Avenue. He said he was responsible for standing near the fence to ensure nobody tried to leave the home. He said that after the other officers forced open the front door, he saw the Defendant run from the right side door and through the backyard. He knocked down the fence and chased the Defendant but did not catch him personally. He said that it was daylight at the time he saw the Defendant run from the house.

Officer Windbush testified that he returned to the home and began searching for drugs and related items and that he found crack cocaine in the microwave. He said he found one large "rock" of cocaine the size of a hand and several smaller rocks the size of the tip of a "pinkie finger." He said the cocaine inside the microwave was not packaged. He said another officer found cocaine in the living room. The State handed Officer Windbush the same photograph and driving history shown to the other officers and Ms. Benton, and he stated that he had never seen the person in the photograph.

On cross-examination, Officer Windbush testified that when the Defendant came out the side door, he saw the Defendant's side profile. He said that after the Defendant was caught, the Defendant was returned to the home while he and the other officers searched. He said he never saw the Defendant without handcuffs. He said, though, that one of the officers allowed the Defendant to put on a hooded sweatshirt because it was cold and the Defendant was wet. He denied seeing the Defendant put on the sweatshirt. He said he did not find scales inside the home.

Memphis Police Officer Brett Giannini testified that on April 16, 2008, he worked in the organized crime unit and that he helped execute a search warrant at 2601 Young Avenue. He was the first officer to enter the home after the door was forced open and said he did not see anyone inside. He said he searched the den and found drugs, plastic sandwich bags, and

three digital scales on a coffee table. He identified crack cocaine found in the den and said the cocaine found in the den and in the microwave weighed 35.2 grams.

Officer Giannini testified that a beaker was generally used to heat and cook crack cocaine. He identified three digital scales and a beaker found in the den and said the scales had a white powder residue. He identified a razor blade found inside the home and said a razor blade was used to "cut up" cocaine. He did not know if it was found in the den or in the kitchen. He said the large rock of cocaine appeared to "have been cut for resale." He said Officer Davis gave him $338 cash found inside the home. He said that based on his training and experience, an average-size small rock of cocaine sold for $10.

Officer Giannini testified that other officers brought the Defendant to the home while he searched for drugs. He said that the Defendant was the only person brought into the home and that nobody else attempted to determine why the police were there. He was shown the same photograph and driving history as the other police officers and Ms. Benton and said he did not see the person in the photograph while searching the home on April 16 or any other time.

On cross-examination, Officer Giannini testified that he did not see the Defendant run from the house when the officer forced open the door. He said they did not obtain fingerprints inside the home. He did not see the Defendant inside the home after he was caught.

Memphis Police Officer Benjamin O'Brien testified that he worked in the organized crime unit in April 2008 and that during the search of 2601 Young Avenue, he went inside the home through the front door after it was forced open. He said he field tested the substances found on the coffee table and in the microwave. He said the substances were positive for cocaine. Tennessee Bureau of Investigation (TBI) forensic scientist Melanie Johnson, an expert in drug identification, testified that on November 16, 2009, she performed a color test and an instrumental analysis of the substances found inside the home at 2601 Young Avenue. She said the substances were cocaine-based and weighed a total of 30.5 grams.

Mary Alford testified that she was familiar with the neighborhood around 2601 Young Avenue because she lived in the area for about ten years. She said that she knew the Defendant by the name of "Weasy" or "Weasel" and that the Defendant lived at the home when she knew him in 2006. On cross-examination, Ms. Alford testified that she last saw the Defendant at the home one or two years before her testimony. She agreed she did not like the Defendant.

Starkesha Alford testified that she knew the Defendant as "Weasy" and that she and the Defendant had dated for three months in 2004. She said that the Defendant lived at 2601 Young Street while they dated, that she stayed overnight once or twice, and that nobody else stayed at the home while she was there. She said that to her knowledge, the Defendant did not have a job while they dated but that she saw him with cash. On cross-examination, Ms. Alford said she did not see the Defendant daily while they dated.

Upon this evidence, the jury convicted the Defendant of two counts of possession of cocaine with the intent to sell twenty-six grams or more. The trial court merged the convictions and sentenced the Defendant to sixteen years' confinement. This appeal followed.

**I**

The Defendant contends that the evidence is insufficient to support his conviction. He argues that the State failed to prove beyond a reasonable doubt that he was the resident of the home in which the cocaine was found. The State responds that the evidence is sufficient and that the State established the Defendant was the resident of the home. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). This means that we may not reweigh the evidence but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the "credibility of the witnesses, the weight to be given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." State v. Dotson, 254 S.W.3d 378, 395 (Tenn. 2008) (citing State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007)); see State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

It is unlawful for a person to possess with intent to manufacture, deliver or sell a controlled substance. T.C.A. § 39-17-417(a)(4) (2010). Felonious possession of cocaine weighing one-half gram or more is a Class B felony. T.C.A. § 39-17-417(c)(1). "Identity of the perpetrator is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). Identity may be established with circumstantial evidence, and the "jury decides the weight to be given to circumstantial evidence, and 'the inferences to be drawn from such evidence, and the extent

to which the circumstances are consistent with guilt . . . , are questions primarily for the jury.'" Id. (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)).

In the light most favorable to the State, the evidence shows that the police received information from a confidential informant that a man named "Weasy," who fit the Defendant's description, was selling drugs from 2601 Young Avenue. Officer Banks performed surveillance on the home for approximately one week, and his confidential informant bought cocaine from the Defendant. During the sale, nobody else was inside the home. Officer Banks saw the Defendant at the home standing on the front porch and in the doorway and allowing people to enter the home. No other people were seen standing on the porch or allowing others to enter the home.

The Defendant was identified by Officers Parker and Davis as the person who ran from the home when the police forced open the front door. Officer Davis saw the Defendant run from the home and never lost sight of him during the chase. Although the utility records showed that Reginald Dowdy was the account holder at the time of the search, Officer Banks testified that in his experience, people who sell drugs from their home are not the utility account holder. Likewise, Ms. Benton testified that Mr. Dowdy lived at 855 Cella Street the entire time she had known him, that Mr. Dowdy had never lived at 2601 Young Avenue, and that Mr. Dowdy had died. The officers who participated in the search of the home were shown a picture of Mr. Dowdy, who weighed significantly more than the Defendant, and each officer said they had never seen Mr. Dowdy at the home. Ms. Benton also testified, and other testimony confirmed, that the utilities at the home were in her name for two months during the time she dated the Defendant, although she had never lived there. We conclude that sufficient evidence exists to support the Defendant's conviction.

As a preliminary matter with regard to the Defendant's remaining issues, we note that the Defendant waived all issues by failing to make contemporaneous objections at the trial. See T.R.A.P. 36(a); Tenn. R. Evid. 103(a)(1). The Defendant concedes waiver of the issues and asks us to consider the issues in the interests of justice as plain error. See T.R.A.P. 36(b). The State contends that plain error does not exist because a clear and unequivocal rule of law was not breached, a substantial right was not adversely affected, and it is not necessary to do substantial justice.

Our supreme court has adopted the factors developed by this court to be considered

> when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a

substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The record must establish all five factors before plain error will be recognized and "complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." Smith, 24 S.W.3d at 283. In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the [proceedings]," and "recognition should be limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." Adkisson, 899 S.W.2d at 642.

## II

The Defendant contends that he was denied an open and public trial. He argues there was not an overriding interest in closing the trial to the public. The State responds that the Defendant was not denied an open and public trial. The State argues that the court only excluded individuals who were potential witnesses and that the Defendant has failed to show a clear and unequivocal rule of law was breached. We agree with the State.

After jury selection, the prosecutor told the trial court that the district attorney's office was still in the process of serving its witnesses with subpoenas and was not sure if some of those witnesses were in the courtroom. Rather than close the courtroom to the public, the trial court, out of the jury's hearing, requested the identity of each person in the gallery. Dora Wilson, Jerry King, Candice Marshall, Rochelle Bruce, and Jeremiah Dockery identified themselves. The prosecutor stated that Ms. Marshall and one of Mr. Dockery's brothers were two of the State's witnesses who had not been served with a subpoena. The prosecutor told the court that had she expected Mr. Dockery to be in court, her investigator would have had a subpoena for him as well. The State requested Mr. Dockery and Ms. Marshall be excluded from the courtroom during the proceedings. Although defense counsel told the court that the Defendant and Ms. Marshall were married, the prosecutor stated that Ms. Marshall gave the state's investigator information leading the prosecutor to conclude that Ms. Marshall was a potential witness whose communications with the Defendant were not protected by privilege. The prosecutor stated that she had reason to believe Ms. Marshall and Mr. Dockery would be witnesses, either in the State's case-in-chief or as rebuttal witnesses. The court ordered the two witnesses to remain outside the courtroom. The State assured the court that if it determined that the witnesses would not be called, the State would inform the court

immediately.

The right to a public trial is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. To avoid violating a defendant's right to a public trial, the trial court should hold a jury-out hearing before closing or partially closing the trial, determine whether the party seeking to close the hearing has an overriding interest that is likely to be prejudiced without the closure, confine the closure to only that necessary to serve such an interest, consider alternatives, and make findings adequate to support the closure. See Waller v. Georgia, 467 U.S. 39, 48 (1984); State v. Sams, 802 S.W.2d 635, 640 (Tenn. Crim. App. 1990). If the record shows a violation of the right to a public trial, prejudice requiring reversal is implied. See State v. Tizard, 897 S.W.2d 732, 749 (Tenn. Crim. App. 1994); Sams, 802 S.W.2d at 641 (noting that to require actual proof of prejudice "would seriously impair, if not actually destroy, the safeguards provided by the public trial requirement").

We conclude that the Defendant's reliance on the right to a public and open trial is misplaced. The issue rather focuses on the trial court's discretion to exclude witnesses and potential witnesses from the trial under Tennessee Rule of Evidence 615. "At the request of a party, the [trial] court shall order witnesses, including rebuttal witnesses, excluded at trial . . . ." Tenn. R. Evid. 615. A trial court's decision to place a witness under the sequestration rule is within the court's sound discretion and will not be disturbed on appeal absent an abuse of discretion that prejudiced the defendant. State v. Chadwick, 750 S.W.2d 161, 166 (Tenn. Crim. App. 1987); see McCravey v. State, 455 S.W.2d 174, 176 (Tenn. Crim. App. 1970). The trial court did not close the trial to the public. The court sequestered two potential trial witnesses. The Defendant was not denied an open and public trial.

**III**

The Defendant contends that the trial court erred by admitting hearsay statements at the trial. He argues that Officer Banks's testimony about his confidential informant's description of the man selling drugs from the home and the informant's purchase of cocaine from the Defendant were inadmissible hearsay statements. The State responds that the trial court did not err and argues that the statements were not being offered to prove the truth of the matter asserted. Hearsay is a "statement . . . offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible unless it qualifies under an exception to the rule. Tenn. R. Evid. 802. "Hearsay is present only if the statement is used to prove the truth of the matter asserted in the statement. . . ." See Neil P. Cohen et al., Tennessee Law of Evidence § 8.01[4][h] (5th ed. 2005). With regard to Officer Banks's testimony about his informant's information about the man selling drugs from the home, we conclude that the statement was offered to prove the truth of the statement

and subject to the hearsay rule. To the extent the State asserted that the evidence was offered to show the officer's reasoning for investigating the home, it was irrelevant in establishing whether the Defendant possessed cocaine with the intent to sell it. See State v. Gilliland, 22 S.W.3d 266, 272 (Tenn. 2000) (concluding background information is generally inadmissible if it fails to assist the jury substantially "in its understanding of the issues or place the material evidence in its proper context"); see also Tenn. R. Evid. 401 (Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Although the officer's testifying about the information provided by his informant was irrelevant, we conclude it was harmless in light of the other evidence presented at the trial. See T.R.A.P. 36(b). The officer testified that he established surveillance at the home for about one week, that he saw the Defendant allowing people to enter and leave the home, that cocaine was found in the home, and that the Defendant was the only person in the home at the time of the search. A substantial right was not adversely affected.

With regard to Officer Banks's testimony about the informant's purchase of cocaine from the Defendant, we conclude that the testimony was not a subject of the hearsay rule. Officer Banks testified that he sent his informant into the home, that he saw the Defendant meet the informant on the porch, that he saw the two go inside the home, and that the informant returned a few minutes later with a substance that appeared to be cocaine. Officer Banks's testimony was based on his personal observations and was not hearsay. We cannot conclude that a clear and unequivocal rule of law was breached.

**IV**

The Defendant contends that the trial court erred by admitting evidence of other police investigations and of typical drug dealer and user behavior. He argues the evidence was irrelevant. The State responds that the Defendant's failure to make a contemporaneous objection deprived the State of its ability to "establish the appropriate foundation for the testimony" and that the Defendant has failed to establish that the evidence adversely affected a substantial right. We agree with the State.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403.

The Defendant argues that portions of Officers Banks, Davis, and Giannini's testimony were irrelevant to the Defendant's guilt and inadmissible. Officer Banks discussed the procedures followed in narcotic investigations, said he used informants to conduct investigations and obtained search warrants in all investigations, and said officers also posed as drug dealers in some cases. Officer Banks discussed the process for obtaining a search warrant and the need for additional investigation after receiving an informant's tip. He said that he checked the utility records to determine if the description of the suspect matched the utility records but that the information rarely matched. Although the testimony was not specifically related to the Defendant's case, the testimony was provided in conjunction with the testimony about the investigation of the Defendant. The State did not rely on Officer Banks's general testimony regarding narcotics investigations to establish the Defendant's guilt. Likewise, because the Defendant's defense was that he was not the resident at the home where the drugs were found, the officer's investigative procedures to verify the informant's tip were relevant. We cannot conclude that a clear and unequivocal rule of law was breached.

Officer Davis testified that based on his training and experience, thirty-two grams of crack cocaine had a street value of about $1500 and was not for personal use. He said drug users possessed one to two grams of cocaine and a pipe to smoke it. Officer Giannini testified that based on his experience and training, razor blades were used to "cut up" cocaine and that the average-size small rock of cocaine had a value of $10. The Defendant was charged with possession of cocaine with intent to sell. The State was required to prove beyond a reasonable doubt that the cocaine found inside the home was for sale, not personal use. The testimony was relevant to prove beyond a reasonable doubt that the cocaine found inside the home was intended for sale, not personal use. The trial court did not abuse its discretion by admitting the evidence.

**V**

The Defendant contends that the trial court erred by admitting evidence of the utility account holder's name at the home. He argues the named account holder two years before executing the search warrant was irrelevant and provided an inference that the Defendant tried to escape police detection for illegal drug activity. The State argues that the Defendant's failure to make a contemporaneous objection deprived the State of its ability to "establish the appropriate foundation for the testimony" and that the Defendant has failed to establish that the evidence adversely affected a substantial right. We agree with the State.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be

-13-

excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. State v. Carruthers, 35 S.W.3d 516, 577 (Tenn. 2000) (citing State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993)). The term "undue prejudice" has been defined as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978) (quoting Fed. R. Evid. 403, Advisory Comm'n Cmt.).

Ms. Benton testified that the Defendant asked her to list her name as the utility account holder for the home at 2601 Young Avenue while they dated. She said that although she did not ask the Defendant why he wanted the utilities to be in her name, she put the account in her name as a favor for the Defendant. During the 404(b) evidentiary hearing, which is discussed in detail in section IX, the trial court concluded that the evidence of Ms. Benton's being the utility account holder was relevant to establishing whether the Defendant lived at the home. The trial court also concluded that the evidence substantially outweighed the danger of unfair prejudice to the Defendant. We conclude that the trial court did not abuse its discretion by admitting the evidence. See State v. DuBose, 953 S.W.2d 649, 655 (Tenn. 1997). The Defendant has failed to establish that a clear and unequivocal rule of law has been breached or that a substantial right has been adversely affected.

## VI

The Defendant contends that the trial court erred by admitting evidence that although he had no job, he had money two years before the search warrant was executed. He argues the evidence is irrelevant. The State argues that the Defendant's failure to make a contemporaneous objection deprived the State of its ability to "establish the appropriate foundation for the testimony" and that the Defendant has failed to show plain error. We agree with the State.

Ms. Alford testified that while she and the Defendant dated in 2004, she saw the Defendant with money but did not know the Defendant to have a job. Because the Defendant failed to object to the testimony about his having money but no employment in 2004, there is "little on the record to facilitate appellate review." State v. John Britt, No. W2006-01210-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App. Dec. 12, 2007), perm. app. denied (Tenn. Apr. 28, 2008). This court has concluded that when a lack of an objection prevents the development of the record, "rarely will plain error review extend to an evidentiary issue." State v. Ricky E. Scoville, No. M2006-01684-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App. Sept 11, 2007) (citing Dorman O'Neal Elmore, Jr. v. State, No. E2005-02263-CCA-R3-PC (Tenn. Crim. App. Aug. 29, 2006)). We conclude that the record does not support the conclusion that a substantial right was adversely affected.

## VII

The Defendant contends that the trial court erred by admitting non-expert testimony about the value of the recovered cocaine. He argues that the court violated Tennessee Rule of Evidence 701 regarding lay opinion testimony by allowing Officers Davis and Giannini to testify about the value of the cocaine. The State contends that the evidence was not improper and that Defendant has failed to establish plain error. We agree with the State.

Tennessee Rule of Evidence 701 states that a non-expert witness may give opinions and inferences which are "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." 701(a)(1), (2). "A lay witness may offer opinions if they are based on the witness's own observations." State v. Kilburn, 782 S.W.2d 199, 203-04 (Tenn. Crim. App. 1989) (citing National Life & Accident Insurance Co. v. Follett, 80 S.W.2d 92 (Tenn. 1935)). This court has concluded, though, that the proper rule to admit police officer testimony regarding the value of drugs seized is Rule 702 related to expert testimony. State v. Timothy Murrell, W2001-02279-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App. July 2, 2003). Tennessee Rule of Evidence 702 states that "[i]f . . . specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." This court also stated that "a resort to Rule 701 when the witness'[s] opinions are offered based on the particularized experience of trained narcotics officers is improper." Id.

Officer Davis testified that he had been with the Memphis Police Department for seven years and that he had been assigned to the organized crime unit for two and one-half years. He said that he had made arrests for simple possession and possession with intent to sell cocaine. He said that based on his experience and training, the cocaine found inside the home was valued at $1500. We conclude that Officer Davis was qualified to testify as an expert. His knowledge about the value of crack cocaine based on his experience and training as a police officer was offered to assist the jury in determining whether the amount of cocaine was for personal use or for sale, a fact in issue at the trial.

Officer Giannini testified that he had worked with the Memphis Police Department for ten years and for the organized crime unit for three years. He stated that based on his training and experience in the "drug industry" and his making arrests for simple possession and possession with intent to sell, a small rock of crack cocaine sold for about $10 on the street, depending upon the weight. He also testified that the cash found on the Defendant's person included one $50 bill, three $1 bills, three $5 bills, three $10 bills and twelve $20 bills. We conclude that Officer Giannini was qualified to testify as an expert. His knowledge about the street value of one rock of crack cocaine based on his experience and

training in the organized crime unit and his general police training helped the jury determine whether the cocaine found in the house was intended to be sold to others or for the Defendant's personal use. We cannot conclude that a substantial right was adversely affected.

## VIII

The Defendant contends that the trial court erred by allowing evidence about the recovery of a razor blade at the home. He argues that because witnesses did not testify that they collected the razor blade and had personal knowledge of where it was found, it was inadmissible. The State responds that the evidence was proper and that the Defendant has failed to establish plain error. We agree with the State.

Tennessee Rule of Evidence 602 states that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." To determine if a witness is competent to testify "for purposes of Rule 602, the trial court must determine whether a witness had a sufficient opportunity to perceive the subject mater about which he . . . is testifying." State v. Land, 34 S.W.3d 516, 529 (Tenn. Crim. App. 2000). This court has stated that knowledge does not require "absolute certainty" but that knowledge cannot be based on "mere speculation." Id. (internal quotation omitted).

The Defendant asserts that Officer Giannini did not have personal knowledge of the razor blade because he was not the person who found it. We disagree. Officer Giannni testified that he found drugs, plastic bags, and scales in the living room. He said, though, that he was assigned the task of tagging all the evidence, regardless of whether he found the items. Although the officer might not have found all the evidence, he tagged all the evidence after it was found by other officers. The evidence bags contained his handwriting showing that he tagged the evidence at the home. We conclude that the officer had knowledge that the razor blade was found in the home and that the evidence was properly admitted.

## IX

The Defendant contends that the trial court erred by admitting evidence of his personal relationship with Ms. Benton, who was a minor at the time of their relationship. He argues the evidence was inadmissible under Tennessee Rule of Evidence 404(b) because it led to the inference that the Defendant was guilty of statutory rape. The State responds that the testimony was not prior bad act evidence and that the Defendant has failed to show that a clear and unequivocal rule of law was breached. We agree with the State.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Tenn. R. Evid. 403. Prejudicial evidence is not excluded as a matter of law. Carruthers, 35 S.W.3d at 577 (citing Gentry, 881 S.W.2d at 6). The term "undue prejudice" has been defined as "'[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Banks, 564 S.W.2d at 951 (quoting Fed. R. Evid. 403, Advisory Comm'n Cmt.).

When relevant evidence reflects on the defendant's character, the trial court must apply the more rigorous standard of Tennessee Rule of Evidence 404(b), rather than Rule 403. State v. James, 81 S.W.2d 751, 758 (Tenn. 2002); DuBose, 953 S.W.2d at 655. Rule 404(b) prohibits evidence of other crimes, wrongs, or acts offered to show a character trait in order to prove that a defendant acted in conformity with that character trait. Tenn. R. Evid. 404(b). Evidence of other crimes, wrongs, or acts, though, may be admissible for other purposes, such as establishing identity, motive, common scheme or plan, intent, or absence of mistake. Id.; State v. McCary, 119 S.W.3d 226, 243 (Tenn. Crim. App. 2003). The rule lists four requirements that must be satisfied before a court determines admissibility:

> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issues, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b)(1)-(4).

Before Ms. Benton's testimony at the trial, the State made an offer of proof out of the jury's hearing. The State argued that with regard to the 404(b) material, Ms. Benton's testimony was to establish identity and to show knowledge. Ms. Benton testified that she knew the Defendant as Dennis Dockery and that they had a boyfriend/girlfriend relationship

-17-

for about two to three years. She said they had an "intimate" relationship. Although she was not sure of the exact dates, she said the relationship was during 2005, 2006, or 2007. She said that she was sixteen when she and the Defendant started dating and that she lived with her cousin while the Defendant lived at 2601 Young Avenue. She said that to her knowledge, the Defendant lived there alone. She said she stayed overnight at the Defendant's home more than ten times.

Ms. Benton testified that the Defendant did not have a job while they dated but that she saw the Defendant with enough cash "to get through." She did not know the source of the money. She said that she did not see drugs in the home or see people other than family and friends visit the home. She said the home's utilities were in her name for a couple of months at the Defendant's request. She said she did not ask the Defendant why he wanted the utilities in her name. She did not receive the utility bills or pay them. She said that when she moved into her own home, the utilities at 2601 Young Avenue were already in someone else's name. She said that to her knowledge, the adjacent home was vacant while she and the Defendant dated. She said she had not been to the home since 2005 or 2006.

The trial court found that Ms. Benton's testimony regarding the Defendant's living at the home was not subject to Rule 404(b) and concluded that the testimony was relevant to whether the Defendant lived at the home at the time the search warrant was executed. The prosecutor told the court that the State wanted a 404(b) hearing in order for the court to determine if putting utilities in another's name to escape police detection and prosecution was a prior bad act under 404(b). The court said, though, that the evidence substantially outweighed the danger of unfair prejudice to the Defendant. The inferences that could be drawn from the Defendant and Ms. Benton's intimate relationship were not raised, and the court did not address it.

The record shows that Ms. Benton testified at the trial that she and the Defendant dated for a period of time and that she stayed overnight at the Defendant's home numerous times. The State did not attempt to elicit detailed information about the nature of their relationship. We conclude that the purpose of the evidence was to establish whether the Defendant lived at the home while Ms. Benton and the Defendant dated and whether he lived at the home at the time the search warrant was executed. We conclude that the trial court did not abuse its discretion by finding that the evidence substantially outweighed the danger of unfair prejudice. See DuBose, 953 S.W.2d at 652. We cannot conclude that a clear and unequivocal rule of law was breached or that a substantial right of the accused was adversely affected.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

                                   _____
                                   JOSEPH M. TIPTON, PRESIDING JUDGE